## Case No. 8,008.

### LAMB v. BOWSER.

[7 Biss. 315.][1]

District Court. D. Indiana. Dec., 1876.[2]

CONFLICT OF LAWS—LEX LOCI CONTRACTUS — EXTRATERRITORIAL STATE LAWS.

1. Where an application for insurance on certain property, and a note and sum of money, that

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

[2] [Affirmed in Case No. 8,009.]

constituted the premium, were sent from Indiana, by an agent of the company to the home office in Illinois, and were examined and accepted by the proper officer, *held*, that the contract was made in Illinois and must be governed by the law of that state.

2. The fact that the company and its agent had not complied with the Indiana statute does not invalidate the policy.

[Cited in Ehrman v. Teutonia Ins. Co., 1 Fed. 475; Berry v. Knights Templars' & Masons' Life Indemnity Co., 46 Fed. 442.]

3. It is not competent for the legislature of one state to declare that its citizens shall not be allowed to make such contracts as they please, out of the state.

[Cited in Marine Ins. Co. v. St. Louis, I. M. & S. Ry. Co., 41 Fed. 653.]

This was an action brought by [Wilmer S. Lamb] the assignee of the Winnesheik Insurance Company on a premium note. The answer alleged that the Winnesheik Insurance company was organized under the laws of Illinois; that the defendant [Barton Bowser] delivered to the agent of the company, in Noble county, Indiana, where the defendant resided, an application for insurance on certain property in that county, and the said note and a certain sum of money, which note and money constituted the premium; that said agent forwarded said application, note and money to the company's place of business at Freeport, in the state of Illinois, and caused a policy of insurance to be delivered to the defendant at said county of Noble, all of which was done by said company and agent without first having complied with an act of the legislature of this state respecting foreign corporations and their agents doing business in this state. The reply admitted that the application and premium note were delivered to the agent in Noble county, and by him forwarded to the company's usual place of business, at Freeport, Illinois, and then alleged that the authority of the agent extended no further than the taking of the application and premium notes and forwarding them to the home office at Freeport, to be examined and acted upon by the company; that the application and premium note in this cause were examined by the proper officer of the company at Freeport, and by him there approved and accepted, and a policy of insurance on the property described in the application, properly made out and executed, was then and there inclosed in an envelope, addressed to the defendant at his residence in said Noble county, and deposited in the mail at Freeport, postpaid. To this reply the defendant demurred.

McDonald & Butler, for plaintiff.
Harrison, Hines & Miller, for defendant.

GRESHAM, District Judge. The first section of the act relied on by the defendant provides that agents of foreign corporations, before entering on the duties of their agency in this state, shall deposit in the clerk's office of the county where they propose doing business, the power of attorney or other author-

ity by virtue of which they act as agents.

The second section provides that said agents shall procure from such corporation, and file with the clerk of the circuit court of the county where they propose doing business, before commencing the duties thereof, a duly authenticated order or resolution of the board of directors or managers of such corporation, authorizing citizens or residents of this state, having a claim or demand against such corporation arising out of any transaction in this state with such agents, to maintain an action in respect to the same in any court of this state, and authorizing service of process in such action on such agent, to be valid service on such corporation.

The third section provides that service on such agents shall have the same effect as service on the corporation.

The fourth section provides that such foreign corporations shall not enforce in any courts of this state any contracts made by their agents or persons assuming to act as their agents, before compliance by such agents or persons acting as such, with the provisions of sections one and two of this act.

The fifth section provides that any persons who shall receive or transmit money or anything else of value to or for the use of such corporation, or who shall in any manner make or cause to be made any contract or transact any business for or on account of any such foreign corporation shall be deemed an agent of such corporation and subject to the provisions of said act. The seventh section provides that any persons acting as agents of foreign corporations neglecting or refusing to comply with the provisions of said act as to agents shall be fined in any sum not less than fifty dollars.

When the company accepted the application and premium note at Freeport, and deposited the policy of insurance in the post-office addressed to the defendant, post-paid, the contract was complete and the note became the binding obligation of the defendant. Then, and not before, the minds of the parties met. Up to that time neither party was bound. Before that time the defendant might have withdrawn his application and demanded the return of his note. The mailing of the policy at Freeport was a delivery to the defendant. The instant that delivery was thus made the risk of the company as insurer commenced. Hyde v. Goodnow, 3 Comst. [3 N. Y.] 266.

The Winnesheik Insurance Company, being a foreign corporation, could act in this state only by agents, and agents of such corporations being expressly prohibited by the statute from making any contracts, or transacting any ordinary business in this state except as therein provided, it would seem that the company, as well as the agent, acted in violation of law in establishing the agency in Noble county, and in taking and forwarding the application and premium note. Union

Cent. Life Ins. Co. v. Thomas, 46 Ind. 44; Etna Ins. Co. v. Harvey, 11 Wis. 394.

And for thus violating the law of the state the agent might have been prosecuted and punished. But it does not follow that, because the company and its agents thus violated the law of Indiana, the contract entered into in Illinois was illegal and void. The case stands just as if the defendant had procured his insurance on personal application to the company at Freeport. But the defendant insists that even if this is to be regarded as an Illinois contract, it was entered into in violation of the Indiana statute, and can not therefore be enforced in this state. In answer to this it might be sufficient to say that it is not competent for the legislature of Indiana to declare that the citizens of this state shall not be allowed to make such contracts as they please out of the state for the insurance of their property, whether it be within or without the state. It by no means follows that, because corporations have no existence beyond the boundaries of the sovereignty or state which creates them, and Indiana has said that foreign corporations shall be admitted to do business in this state only on certain terms, which were not complied with by the Winnesheik Insurance Company, the contract in this case, made in Illinois, is void.

Clearly it was not the intent of the legislature to apply this statute to contracts entered into with corporations out of the state. The title of the act reads: "An act respecting foreign corporations and their agents in this state." In the first section, in speaking of what shall be required of agents, we find this language: "Before entering upon the duties of their agency in this state." The second section provides that the appointment or power of attorney of such agents shall authorize the citizens or residents of this state having a claim or demand on such corporation arising out of any transaction in this state with such agents to sue, etc.

Section 4 provides that "such foreign corporations shall not enforce in the courts of this state any contracts made by their agents before a compliance made by such agents with the provisions of sections one and two of this act."

It is further insisted by the defendant that no country or state is bound to enforce contracts which are contrary to the policy of its own laws, and that even if the contract was finally consummated in Illinois, it was not until the statute of Indiana had been violated, and that what was done in Illinois was in evasion if not in violation of the statute. This contract was valid in Illinois where it was made. The rule is that a contract which is good where made is good everywhere, and a contract which is void by the law of the place where it is made, or of the place where it is to be performed, is void everywhere. Hyde v. Goodnow, 3 Comst. [3 N. Y.] 266.

As already shown, the defendant's contract with the company was not in violation of the statute. Its enforcement here would contravene no declared policy of the state, and certainly it was not immoral in itself. The law of comity, which has always been recognized to the fullest extent among the states of our Union, makes it the duty of courts to enforce such contracts. There is nothing in the legislation of Indiana indicating that this law of comity is not to have full sway in the courts of this state. By that law a corporation created by one sovereign or state is permitted to make contracts in another and to sue in its courts. Indiana has said, as she had a right to say, that before foreign corporations shall be allowed to carry on business in this state, by their agents, they shall submit to certain conditions, and that failure to submit shall make void all contracts of their agents made in this state. Further than this, the legislature has not undertaken to go.

The case of Reynolds v. Geary, 26 Conn. 179, which seemed to be chiefly relied on by the defendant's counsel in support of this branch of their argument, was an action brought on a note given by the defendant to the plaintiff for spirituous liquors sold by the plaintiff to the defendant. The note was given in the city of New York, and the sale was made there with knowledge on the part of the plaintiff that the liquors were to be sold by defendant in Connecticut, contrary to the laws of that state, and with intent on the part of the plaintiff to enable the defendant to violate the laws.

The statute which was thus violated declared that "no action of any kind shall be maintained in any court of this state, for spirituous and intoxicating liquors sold in any other state or country contrary to the laws of said state or country, or with intent to enable any person to violate any provisions of this act."

The court held that mere knowledge of the plaintiff that the liquors were bought for sale in Connecticut would not have made the note void, but that the intent on the part of the plaintiff that, with his assistance, the defendant should violate the statutes, made the plaintiff particeps criminis.

I am not able to see that this case affords the defendant any support. The sale of spirituous liquors in New York with intent on the part of the seller to enable the purchaser to violate the law brought the contract within the letter of the act. It is not necessary to enlarge upon the character of this Connecticut statute as a police regulation for the protection of the public health and morals. The distinction in that respect between it and the kind of legislation relied on by the defense is obvious. Demurrer overruled.

This case was argued before Judge Drummond on appeal, and after careful examination of the questions, the rulings of the district judge were affirmed. See Lamb v. Bowser [Case No. 8,009].